

# The Attorney General of Texas

December 31, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Robert Bernstein, M.D., F.A.C.P.
Commissioner of Health
Texas Department of Health
1100 West 49th Street
Austin, Texas   78756

Opinion No. MW-590

Re:   Whether   fees   collected
for   physicians'   services   at
certain state hospitals must
be   placed   in   the   state
treasury

Dear Dr. Bernstein:

You have asked this question:

> Are fees and charges collected for physicians'
> services pursuant to article 3201a-3, section 6A,
> exempt from article 4393c?

Article 3201a-3, V.T.C.S., provides in part:

> Section 1.   In addition to the treatment of
> tuberculosis,  the  Harlingen  State  Chest  Hospital
> and  the  San  Antonio  State  Chest  Hospital  may
> create a pilot program to treat persons afflicted
> with  other  chronic  diseases  of  the  respiratory
> system regardless of the diagnosis.
>
>     ....
>
> Sec. 6A.   Fees  and  charges  collected  by  each
> hospital   for   physicians'   services   shall   be
> retained  locally  and  shall  be  used  only  for  the
> purpose   of   recruiting,   retaining,   and
> supplementing   the   salaries   of   the   hospital's
> medical staff.   Distribution of fees and charges
> for physicians' services shall be subject to rules
> and regulations adopted by the medical staff, not
> inconsistent   with   the   laws   of   this   state
> regulating the practice of medicine.

Article 4393c, V.T.C.S., the State Funds Reform Act of 1981,
provides in part:

> Sec. 4. All fees, fines, penalties, taxes, charges, gifts, grants, donations, and other funds collected or received by a state agency as authorized or required by law shall be deposited in the state treasury, credited to a special fund or funds, and subject to appropriation only for the purposes for which they are otherwise authorized to be expended or disbursed. Deposit shall be made within seven days after the date of receipt.

Section 3 lists various exceptions to this requirement. You contend that one of these exceptions is applicable in this instance. It provides:

> (b)   This Act does not apply to:
>
>      ....
>
>      (2)   funds held in trust or escrow for the benefit of any person or entity other than a state agency.

By way of explanation, you stated in your memorandum brief that:

> As provided by Section 6A, the hospitals' collections for physicians' services were <u>locally retained</u> and were under the <u>exclusive control</u> of the physicians comprising the medical staff of the hospital. The physicians, by agreement, <u>have created an express trust to control disbursement of the funds</u>.... The hospitals are reimbursed for the fund for collection costs incurred on behalf of the physicians.... The first requirement [of section 3(b)(2)] that the funds be held in trust is met since all fees and charges collected for physicians' services are placed in the Medical Trust Fund.... The second requirement is also met in that the funds benefit a person or entity other than a state agency. These funds benefit the physicians who are members of the plan and in no way benefit a 'state agency.' (Emphasis added).

Before considering your argument that fees and charges collected under section 6A of article 3201a-3 are exempt from article 4393c under section 3(b)(2) thereof, we must address two preliminary questions. The first is whether the Harlingen and San Antonio State Chest Hospitals are "state agencies" within the meaning of article 4393c. We conclude that they are. Section 2 of this statute defines "state agency" broadly, as including:

> any department, commission, board, office, institution, or other agency that is in the executive branch of state government, has authority that is not limited to a geographical portion of the state, and was created by the constitution or a statute of this state, but does not include [certain departments and institutions].

In our opinion, these two state hospitals are "institutions" which satisfy each of the conditions for being a "state agency" set forth in section 2.

The second question concerns the relationship between article 4393c and section 6A of article 3201a-3. Although the former statute, which was enacted in 1981, generally requires state agencies to deposit in the state treasury any fees or other funds that they collect or receive, the latter, which was added to article 3201a-3 in 1975, provides that fees and charges collected pursuant to that statute "shall be retained locally." The question is whether section 6A constitutes an exception to article 4393c.

Although our courts have held that repeals of statutes by implication are not favored, Hines v. State, 515 S.W.2d 670 (Tex. Crim. App. 1974), and that the enactment of a general law does not ordinarily impliedly repeal a special law, Flowers v. Pecos River R. Company, 156 S.W.2d 260 (Tex. 1941), they have also held that:

> Where a later enactment is intended to embrace all the law upon the subject with which it deals, it repeals all former laws relating to the same subject. Gordon v. Lake, 163 Tex. 392, 356 S.W.2d 138 (1962). Under this rule, a statute that covers the subject matter of a former law and is evidently intended as a substitute for it, although containing no express words to that effect, operates as a repeal of the former law to the extent that its provisions are revised and its field freshly covered. See Motor Inv. Co. v. Hamlin, 142 Tex. 486, 179 S.W.2d 278 (1944).

McInnis v. State, 603 S.W.2d 179, 183 (Tex. 1980). We believe that this rule is applicable here. In our view, although article 4393 contains no express words of repeal, its comprehensiveness and detail, i.e., its application to "all fees... collected or received by a state agency" (emphasis added), coupled with the fact that it lists only certain specific exceptions, compel the conclusion that its purpose was to "embrace all the law on the subject with which it deals." See also Bill Analysis of House Bill No. 1623, prepared for House Committee on Ways and Means (which indicates that the purpose of the

law was to harmonize conflicting prior laws relating to deposits of money in treasury by state agencies). This means that the "shall be retained locally" language in section 6A of article 3201a-3 is no longer operative. Thus, if the fees and charges to which section 6A refers are not within one of the exceptions to article 4393c, they must be deposited in the state treasury.

As we have noted, the only exception to article 4393c that you have raised -- and the only one that we believe could be applicable here -- is the section 3(b)(2) exception. Your argument that this section applies raises some interesting questions. For example, it is not entirely clear whether the physicians of these two state hospitals properly assumed "exclusive control" of these fees and charges and had the legal authority to create the express trust to which you refer in your letter. We need not address this question, however, because we conclude that even if this express trust was validly created, the section 3(b)(2) exception is still inapplicable in this instance.

As you recognize, funds held in trust or escrow must, in order to be exempt from article 4393c, be held "for the benefit of any person or entity other than a state agency." We have already determined that the San Antonio and Harlingen State Chest Hospitals are "state agencies" within the meaning of article 4393c. Thus, to be exempt, these fees and charges must be held in trust for the benefit of some person or entity other than these two hospitals. Under section 6A, these funds may be used "only for the purpose of recruiting, retaining, and supplementing the salaries of the hospital's medical staff." In our opinion, the use of these funds for the designated purposes will directly benefit these hospitals. Said use will facilitate the hospitals' ability to attract qualified physicians to serve on their medical staffs and to retain those who presently serve thereon. To the extent these funds provide qualified physicians with an additional incentive to both join and remain on these hospitals' medical staffs, they certainly "benefit" these hospitals.

You argue that "[the phrase] 'fees and charges for physicians' services' cannot be construed as benefitting a 'state agency' without running afoul of the Medical Practices Act," article 4495b, V.T.C.S. Specifically, you contend that section 3.07(f) of this act provides that it is unlawful for a person to engage in certain acts, including:

> (12) permitting or allowing another to use his license or certificate to practice medicine in this state for the purpose of diagnosing, treating, or offering to treat sick, injured, or afflicted human beings

and that:

> collection and use by the hospital of fees for physicians' services is considered to be permitting the hospital to use the physicians' licenses to practice medicine in violation of the Medical Practices Act. See Rockett v. Board of Medical Examiners, 287 S.W.2d 190 (Tex. Civ. App. - San Antonio 1956, writ ref'd n.r.e.).

The Rockett court held, inter alia, that the predecessor of the aforementioned subsection (12), see article 4505, V.T.C.S., was violated where a clinic in which no licensed medical doctor owned an interest collected fees for the services of a physician whom the clinic employed.

We cannot accept your argument. We do not agree that our conclusion that the state hospitals in question "benefit" from the use of these fees and charges necessarily means that such benefit is illegal. Even if we assume that the rationale of the Rockett case would prevent state hospitals from benefitting from the professional services of the physicians whom they employ -- a question which we do not decide -- the fact remains that the power to regulate the practice of medicine in this state rests with the legislature. Just as the legislature is free to impose restrictions upon the practice of medicine, it is free to create exceptions to those restrictions. To the extent that section 6A of article 3201a-3 permits the two state chest hospitals in question to benefit from the services of the physicians on their medical staffs, we believe that it constitutes just such an exception.

For these reasons, we conclude that, under the facts that you have presented, the fees and charges to which section 6A of article 3201a refers are not within the section 3(b)(2) exception to article 4393c. We therefore answer your question in the negative.

## S U M M A R Y

Fees and charges collected pursuant to article 3201a-3, section 6A, V.T.C.S., are not exempt from article 4393c, section 4, V.T.C.S., under section 3(b)(2) thereof, and therefore must be deposited in the state treasury.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Bill Campbell
Rick Gilpin
Jim Moellinger